Case 2:12-cr-00418   Document 896   Filed in TXSD on 12/19/16   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
December 19, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| VS. | § | CRIMINAL ACTION NO. 2:12-CR-418-4 |
| | § | |
| JESUS GREGORIO LOPEZ; aka GOYO, | § | |
| | § | |
| Defendant/Movant. | § | |

## **MEMORANDUM OPINION & ORDER**

Defendant/Movant Jesus Gregorio Lopez (hereinafter "Movant," "Lopez," or "Goyo") filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 871) and brief in support (D.E. 872).[1] The United States of America (the "Government") filed a motion for summary judgment (D.E. 880), to which Movant replied (D.E. 881). For the reasons stated herein, the Government's motion for summary judgment is granted, and Movant's § 2255 motion is denied.

## **I. Background**[2]

This case concerns a conspiracy to smuggle large quantities of marijuana from Mexico into the United States, involving at least a dozen individuals, from 2003 to 2012. At trial, the Government primarily relied on testimony from the following individuals, all of whom admitted to being involved in the drug conspiracy: Jesus Marroquin; Ronny Rice; Edward Mata; Richard Patton; Servando Guerra; Luis Andreas Longoria; Jose Maria

---

[1]. All citations to the docket sheet refer to Criminal Case No. 2:12-418-4.
[2]. The background is recited from the Fifth Circuit's opinion in *United States v. Lopez*, 582 F. App'x 438, 440–41 (5th Cir. 2014).

Carbajal, Jr.; Rene Salazar, Jr.; Jose Figueroa; and Adrian de la Garza. The Government also offered testimony from numerous law enforcement officials involved in investigating the conspiracy.

Jose Maria Carbajal, Jr. ("Carbajal") began trafficking marijuana in the mid-to-late 1980s. Initially, he carried 20-pound loads of marijuana in backpacks through Encino and Falfurrias, Texas. Carbajal later met another supplier and began moving larger loads of approximately 150 to 200 pounds. Carbajal and his associates, Edward Mata ("Mata") and Richard Patton ("Patton"), used ATVs and night-vision goggles to trespass through ranches near the Falfurrias Border Patrol Station to smuggle the marijuana past the checkpoint.

Sometime around 2005, Movant learned of Carbajal's operation, and he approached Carbajal to offer Carbajal the use of his ranch, Las Carolina Ranch ("Carolina Ranch"). Before beginning their working relationship, Movant asked Carbajal to pass a test: he wanted Carbajal to move some marijuana belonging to Damien Solis, a drug trafficker, through Movant's ranch past the Falfurrias Border Patrol Station. Carbajal passed the test, and he introduced Jesus Marroquin ("Marroquin") to Movant. Carbajal told Movant that he and Marroquin would begin using Carolina Ranch. For the next seven years, Marroquin and Carbajal moved loads of marijuana through ranches including Carolina Ranch, transporting more than 25,000 pounds of marijuana into the United States.

In 2006, Movant asked Carbajal to come to a meeting with Robert Garza, who had been trafficking in marijuana since at least 2004, using an employee, Ronny Rice ("Rice"), to drive shipments into the United States. Soon after the meeting between Movant, Carbajal, and Garza, Garza's brother Alex began delivering shipments to Carolina Ranch. According

to Carbajal's trial testimony, "[t]hat's where the big quantities started coming in." The Garzas and other distributors dropped off 500-to-1,500-pound loads of marijuana at Carolina Ranch. Phone records revealed that Movant was in frequent contact with Carbajal and Robert Garza. As the operation grew, Movant decided to build an outhouse with a false bottom on his ranch for the smugglers to conceal the marijuana. The outhouse could hold between 1,000 and 1,500 pounds of marijuana.

While investigating the conspiracy, the Government seized marijuana on a number of occasions between 2003 and 2012. They recovered marijuana from a number of Carbajal's employees, Rice, and from Carbajal and Garza themselves.

Carbajal was arrested in early 2011. Law enforcement officials had begun to suspect Movant's involvement in the conspiracy, and they interviewed him after Carbajal was arrested. They later returned to Carolina Ranch to execute a search warrant, and they discovered an illegal alien, Marvin Ruiz ("Ruiz"), whom Movant employed as a ranch hand. Movant was charged with harboring an illegal alien. When the Government interviewed Ruiz, he told them that he did not have any knowledge of illegal activity at the ranch. The Parties disagree as to when the Government informed Movant's counsel of Ruiz's statement. Before Movant eventually pled guilty in the alien harboring case in late 2011, he agreed to allow the Government to release Ruiz from custody and remove him from the United States.

In May 2012, Movant, Ramon Zamora ("Zamora"), Garza, and nine coconspirators were indicted for conspiracy with intent to distribute more than 1,000 kg of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Movant, Zamora, and Garza

went to trial, and the jury found all three guilty. Movant was represented by Alfonso Ricardo Flores ("Trial Counsel") at trial and sentencing. Movant was sentenced to 292 months' imprisonment, to be followed by 5 years' supervised release. He appealed, and his conviction and sentence were affirmed on September 24, 2014. Movant filed the instant § 2255 motion on December 22, 2015. It is timely.

## II. Movant's Claims

Movant's § 2255 motion raises the following claims:

A. Whether Movant is entitled to a new trial where the Government's star witness was influenced to exaggeration at trial by the expectation of a light sentence.

B. Whether the Government committed a *Brady* violation when it failed to timely disclose the fact that Movant's ranch hand, Marvin Ruiz, had made a statement to authorities claiming no knowledge of anything illegal on Carolina Ranch.

C. Whether Trial Counsel was ineffective in failing to assert a *Brady* claim in the district court and seek an immediate mistrial or file a motion for new trial.

D. Whether, in the alternative, Trial Counsel was ineffective in failing to oppose Ruiz's transfer to ICE custody and deportation without preserving his testimony by deposition.

E. Whether Trial Counsel was ineffective in failing to take appropriate steps to exclude evidence detrimental to the defense from the jury's consideration and otherwise preserve evidentiary error for appellate review.

F. Whether Trial Counsel was ineffective in preparing for and presenting evidence to challenge the notice of criminal forfeiture regarding Carolina Ranch contained in the indictment.

    G. Whether Trial Counsel was ineffective in failing to argue that the recommended Sentencing Guideline range was greater than necessary to serve the purposes of incarceration under 18 U.S.C. § 3553.

## III. Legal Standard

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

## III. Analysis

### A. Whether Movant is entitled to a new trial based on Carbajal's "exaggerated" testimony

Movant claims his conviction is unconstitutional because it was partially based on Carbajal's "exaggerated" testimony due to his expectation of a lighter sentence. In support of this claim, Movant has offered the affidavit of Carbajal, wherein he states that "there was a lot that Goyo [Movant] didn't know about that I did on his property. I never told Goyo

what all I was doing on the property . . . Goyo was not involved in everything." Carbajal Aff., D.E. 872-1, pp. 55–56.[3]

The Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using perjured testimony. *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972)). To obtain relief on grounds that the government relied on perjured testimony, a defendant must show that: (1) a witness for the government testified falsely; (2) such testimony was material; and (3) the prosecution knew that the testimony was false. *Id.*

Carbajal pled guilty to the conspiracy and testified at trial. Specifically, Carbajal testified that Movant approached him outside a convenience store and offered to allow him to use Carolina Ranch to help transport marijuana past the Falfurrias Border Patrol checkpoint. When Carbajal got to Carolina Ranch, there was already a 200-pound load of marijuana there, which he smuggled to Falfurrias as a test. Over time, Carbajal learned that Movant allowed other people and groups to use Carolina Ranch for marijuana smuggling, besides just his crew. At one point, Movant arranged a meeting between Garza, Carbajal, and himself, after which the smuggling business expanded significantly. Carbajal paid Movant roughly $3,000 cash per load, either hand-to-hand or via a PVC pipe buried in the ground. In the beginning, Carbajal and Movant would talk on the phone after each load, but after a while, Carbajal would provide Movant with his cut without communicating about

---

[3]. Movant also cites Carbajal's statements that "Scotty Patton and Edward Mata would go to Goyo's without Goyo or me knowing it," and "Scotty, Edward & Luis [Longoria] were using Goyo's ranch without permission." *Id.* These statements are hearsay and not based on personal knowledge, as Carbajal further states that he found this out because he was having an affair with Edward Mata's wife, and she would tell him when Mata was at Carolina Ranch. *Id.* p. 55.

every load. Finally, Carbajal testified that Movant told him he built an outhouse as a stash house for them to store marijuana.

Movant does not claim that Carbajal's trial testimony was perjured, but rather that it was "exaggerated." More importantly, Carbajal's affidavit does not, as Movant claims, confirm that Carbajal "falsely implicated [Movant] in his drug conspiracy in order to manipulate the Government, protect himself, and get a shorter sentence." D.E. 872, p. 52. Carbajal's affidavit testimony does not disavow his trial testimony or state that he falsely implicated Movant. Carbajal does not say that Movant never approached him about using Carolina Ranch, that he never paid Movant to allow him to store marijuana on Carolina Ranch, or that Movant was not involved in the conspiracy; instead, Carbajal merely states that there was "a lot" that Movant didn't know about because he never told Movant "what all he was doing" on the property, and Movant was not involved in "everything." This is not a recantation of Carbajal's trial testimony. Finally, Movant fails to allege that the Government used Carbajal's trial testimony knowing it was false. Accordingly, Movant's claim that he is entitled to a new trial based on Carbajal's testimony must fail.

## B. Whether the Government committed a *Brady* violation

Movant alleges a *Brady* violation, claiming his conviction was unconstitutionally obtained because the prosecution failed to disclose evidence favorable to him. *See Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Movant complains that the Government violated *Brady* by not timely disclosing the statement by Movant's ranch hand, Ruiz, that he was not aware of any illegal activity on Carolina Ranch. According to Movant, had Ruiz

been available to corroborate Movant's testimony at trial, Movant would not have been convicted.

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "[T]o establish a *Brady* violation, a defendant must make the following showing: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). Evidence is material for the purposes of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," meaning the probability is "sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Here, the evidence in question is Ruiz's statement to Agent Gamboa that he was not aware of any drug trafficking going on at Carolina Ranch. Assuming this statement was favorable to Movant, the Government disclosed it to attorneys Singleterry, Martinez, and Flores (Trial Counsel) almost a year before Movant's trial in his marijuana case, and before his stipulation to release Ruiz in his alien harboring case. During the final pretrial conference in Movant's drug trafficking case, Trial Counsel and AUSA Hampton both told the Court that AUSA Muschenheim had informed Movant's counsel of Ruiz's statement at the time of the October 21, 2011 arraignment/status conference in Movant's alien harboring

case.[4] Movant argues that the statement was not disclosed because it is not recorded in the hearing transcript; however, the hearing included a two-hour break after Movant's arraignment so that defense counsel could confer with AUSA Muschenheim before the status conference concerning Ruiz. D.E. 43, Hrg. Tr. at 8:17-25, 11:7-8. Movant further argues that Ruiz's statement was not disclosed because it was not included in the material witness affidavit that was entered into the record as stipulated testimony in Movant's alien harboring case. As Agent Gamboa explained, "[T]hat statement was specifically for the harboring charge." D.E. 744, Trial Tr. at 310:14-15. The fact that Ruiz claimed he was unaware of any drug trafficking activity at Carolina Ranch was not relevant to the alien harboring charge.

The Parties discussed Ruiz's statement extensively during the October 15, 2012 pre-trial conference, when the Government sought to prevent defense counsel from arguing that Ruiz could not testify because the Government had deported him. At that time, Trial Counsel stated that Movant's defense was that Ruiz was in fact a coconspirator in the drug trafficking operation.[5] This would have rendered false Ruiz's statement that he was unaware of any illegal activity at Carolina Ranch, but the Government nonetheless agreed to have

---

[4]. D.E. 735, Tr. at 10:22–11:5 (Hampton: "Basically, he said, he knew—he had no knowledge of that, this alien. There was a hearing held—I think it was before Judge Owsley. Mr. [Muschenheim] was the prosecutor on the case at that time—to release the material witness. It's my understanding there were several conversations. There were motions filed regarding whether or not that witness should be kept here because Mr. Lopez was facing these current charges."), Tr. at 12:2-7 (Trial Counsel: "When we came on the behalf of Mr. Lopez, he just happened to have his hearing at the same time that the alien's expedited departure hearing was had. Jon Mushenheim advised us at that time that the alien had given an exculpatory statement. Mr. Gamboa has forgotten about that statement or has denied that statement existed.").

[5]. D.E. 744, Trial Tr. at 317:8-14 ("Mr. Flores: Your Honor, part of the defense—and, which I've said openly, is that the—one of main actors on the ranch that participated in the conspiracy was Marvin. And not necessarily Goyo. Instead, saying we've been able to determine that Marvin did participate in the conspiracy . . . ."); D.E. 735, Trial Tr. at 11:23-25 ("[W]e've been able to determine since then that the actual alien that was released was a coconspirator . . . .").

Agent Gamboa testify as to the statement during trial—which he did—so the statement was never suppressed. *See* D.E. 744, Trial Tr. at 310:17-19, 316:8-9, 321:20-25. Accordingly, there was no *Brady* violation.

### C. Ineffective Assistance of Counsel Claims

#### 1. Ineffective Assistance of Counsel Standard

An ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). To show prejudice in the sentencing context, a movant must show that counsel's deficient performance resulted in any amount of prison time above that the petitioner would have received if the forfeited complaint had been advanced at trial or on appeal. *United States v. Grammas*, 376 F.3d 433, 438–39 (5th Cir. 2004).

2. Analysis

a. **Failure to assert a *Brady* claim and seek an immediate mistrial or file a motion for new trial**

Movant claims that Trial Counsel was ineffective for failing to assert a *Brady* violation and move for a mistrial and/or new trial on this ground. As set forth in Part III.B, *supra*, there was no *Brady* violation. Thus, it would have been frivolous for Trial Counsel to have asserted a *Brady* claim and moved for a mistrial and/or a new trial. Trial Counsel was not ineffective on this ground.

b. **Failure to oppose Ruiz's removal without preserving his testimony by deposition**

Movant claims that Trial Counsel should have either opposed Ruiz's deportation in the alien harboring case or moved to depose Ruiz before he was deported.[6]

---

[6]. As evidence of how Ruiz would have testified at trial, Movant has submitted the affidavit of Ruiz, who is currently in Guatemala. Ruiz Aff., D.E. 872-1, pp. 60–62. Because there was no *Brady* violation, and because Trial Counsel was not ineffective for failing to oppose Ruiz's removal without preserving his testimony, the Court need not address the substance of Ruiz's affidavit. However, the Court notes that there is not a reasonable probability that, had this testimony been presented at trial, the result of the proceeding would have been different. Trial Counsel previously represented to this Court that Ruiz was a coconspirator, and he elicited trial testimony from Agent Gamboa that Ruiz was involved in the conspiracy, but there was insufficient information to indict him. D.E. 744, Trial Tr. at 320:25–321:6. Movant also argued on appeal that "several witnesses pointed to Ruiz's role in the conspiracy." *Lopez*, 582 Fed. App'x at 449.

Movant would now have the Court believe that Ruiz, like Movant himself, was an innocent bystander. In his affidavit, Ruiz states that he never saw marijuana or any other illegal drug come onto Carolina Ranch; there was no pipe where money would be placed for Movant to retrieve; when Movant was at the ranch, he and Ruiz were together at all times except for when they slept; Movant did not know that Carbajal was storing or transporting anything other than hay, and to the extent Carbajal testified that Lopez was involved in transporting marijuana, he was lying. Ruiz Aff., p. 61. The Fifth Circuit summarized the evidence against Movant as follows: "Carbajal testified that Lopez approached him and offered to allow Carbajal to use his ranch to help transport the drugs past the border-patrol station. Carbajal also testified that Lopez arranged a meeting between the two of them and Garza, and that after that meeting, the smuggling business expanded significantly. The jury also heard testimony from a number of other witnesses describing Lopez's involvement in the smuggling conspiracy. The coconspirators testified that they told Lopez they were going to drop marijuana off at his ranch, that Lopez was present during the loading and unloading of the marijuana, and that they witnessed Lopez and Carbajal meeting. Witnesses also told the jury that Lopez was present while loads of marijuana were being moved." *Lopez*, 582 Fed. App'x at 445. As the Government aptly argues, given the evidence of Movant's involvement in the conspiracy that was developed during trial from multiple witnesses and coconspirators, the testimony of a single witness—who himself was suspected of being involved in the conspiracy by helping to build a stash outhouse—disavowing knowledge of any illegal activities would not have affected the jury's verdict.

Trial Counsel did not enter a notice of appearance as co-counsel in Movant's alien harboring case until November 29, 2011—after the immigration judge had already ordered Ruiz deported. The lead counsel in the alien harboring case was Attorney Singleterry, who represented Movant in the October 21, 2011 status conference during which Movant agreed to a stipulation of Ruiz's statements and did not oppose Ruiz's deportation. Trial Counsel did not have the authority to act on Movant's behalf while Movant was already represented by other counsel. Movant was indicted in the drug trafficking case on May 23, 2012, and Trial Counsel filed a notice of appearance in that case on June 12, 2012. As the Government correctly points out, it is hardly logical that Trial Counsel rendered ineffective assistance in the 2012 drug trafficking case before Movant was notified that the Government would seek an indictment, and while Movant was already represented by other counsel in the alien harboring case. Trial Counsel was not ineffective on this ground.

### c. Failure to exclude detrimental evidence and/or preserve evidentiary error for appellate review

Movant next claims that Trial Counsel was ineffective for failing to object to hearsay and speculative testimony presented by the Government and failing to preserve these objections for appeal. According to Movant, the Government's witnesses merely "thought," "assumed," or "believed" that Movant was involved in the drug trafficking conspiracy and knew what was going on, but Trial Counsel only raised a total of five evidentiary objections during six days of testimony. As a result, the jury convicted Movant on inadmissible evidence, he was unable to raise any evidentiary issues on appeal, and the Fifth Circuit was

permitted to consider evidence that should have been excluded as legally sufficient to support his conviction.

Movant mostly complains that Trial Counsel should have objected to Carbajal's "speculative" testimony that he "guessed" Movant found out he was a drug courier and was offering to assist in the drug trafficking operation, when Movant was only offering to provide Carbajal with a place to store some hay. At trial, Carbajal explained that he guessed *how* Movant found out that he was a drug courier—from Solis, who was at Carolina Ranch when Carbajal met with Movant to discuss whether Carbajal could transport 200 pounds of marijuana that Solis had already stored at the ranch. D.E. 743, Tr. at 20:6–23:10. This testimony is not speculative, and Trial Counsel was not deficient for not objecting to it.

Movant further complains that the remaining co-conspirators who testified against him only "thought," "assumed," or "believed" that he was involved in the drug conspiracy, and Trial Counsel should have objected to their testimony. Specifically, Movant complains that Marroquin testified, "I just think [Movant] was in agreement because that's why I was taken there so that I could go in." However, Marroquin also testified that at this initial meeting with Movant, he was introduced to Movant as an individual who was going to drop off the "marijuana"—not hay—before it was picked up for further transportation by Carbajal. D.E. 738, Trial Tr. at 77:24–78:17. Movant also complains of Patton's testimony that "I wouldn't tell him what I was doing, I just assumed he knew." Patton further testified that he had borrowed tarps, plastic, wire, and/or rope from Movant a couple of times to cover the marijuana; he assumed Movant knew what he was doing because he had been there so many times; he had asked Movant whether he could spend a night at Carolina

Ranch because law enforcement was nearby; and Movant would ask him how his trip went the night before. D.E. 741, Trial Tr. at 141:4–145:16. Finally, Longoria's testimony that Movant said "nothing" to him was preceded by testimony that Movant told him and Carbajal that he had built an outhouse as a stash house for them if they needed another one, and that Longoria had personally left money for Movant in the buried PVC pipe. D.E. 742, Trial Tr. at pp. 110:14–111:4, 112:12–113:24. Taken in context, this testimony was not speculative, and Trial Counsel was not ineffective for failing to object to it. The remaining statements about which Movant complains were elicited during cross-examination by Trial Counsel to show Movant's lack of personal involvement and were not objectionable.

Finally, Movant claims that because there was insufficient evidence linking him to the conspiracy, Trial Counsel should have objected to any out-of-court statements by Carbajal implicating Movant in the conspiracy and should have moved for a *James*[7] hearing to determine their admissibility. "*James* requires the trial judge, upon proper motion, to find whether a preponderance of the independent evidence shows that a conspiracy existed, that the defendant and declarant were members of the conspiracy, and that the statement was made during and in furtherance of the conspiracy." *United States v. Nichols*, 695 F.2d 86, 90–91 (5th Cir. 1982). As set forth above, Carbajal's in-court statements linking Movant to the conspiracy were not speculative. Moreover, during the first day of the trial, Marroquin testified to Movant's involvement in the conspiracy. Trial Counsel objected to hearsay, but the objection was overruled because Marroquin's testimony was offered as statements of co-

---

[7]. *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc). "The purpose of a *James* hearing, which must be held out of the presence of the jury, is to determine whether an extra-judicial statement by one alleged coconspirator may be used in evidence against another alleged coconspirator." *United States v. Perry*, 624 F.2d 29, 29 n.1. (5th Cir. 1980).

conspirators in furtherance of conspiracy. D.E. 738, Trial Tr. at 77:13-22. Other co-conspirators also implicated Movant in the conspiracy based on their own interactions with him, beyond what Carbajal told them. The Fifth Circuit's "review of the record demonstrate[d] that there was more than sufficient evidence" of Movant's involvement in the conspiracy. *Lopez*, 582 Fed. App'x at 445. Accordingly, Trial Counsel was not ineffective for failing to object to Carbajal's out-of-court statements made in furtherance of the conspiracy or failing to move for a *James* hearing. Movant is not entitled to relief on this issue.

### d. Failure to challenge the notice of criminal forfeiture contained in the indictment

Movant's next claim pertains to the criminal forfeiture of Carolina Ranch. Movant claims the ranch was actually the property of his wife, who had to hire her own attorney to recover the property due to Trial Counsel's ineffectiveness in failing to adequately prepare for and present evidence to challenge the notice of forfeiture before the jury.

Movant's wife—who appears to be the aggrieved party—has no standing under § 2255. Moreover, the Government filed an agreed motion to vacate the preliminary order of forfeiture on January 15, 2014, which the Court granted. D.E. 796, 797. It is unclear what harm Movant suffered, or what relief he seeks, as the Government has released its *lis pendens* against Carolina Ranch. Accordingly, this claim is denied.

### e. Failure to challenge the recommended Sentencing Guideline range

Finally, Movant claims that Trial Counsel should have argued for a downward variance under 18 U.S.C. § 3553. Had he done so, Movant argues, there is a reasonable

probability that the Court would have sentenced Movant to a below-guideline sentence, given the nature of the offense and his employment history, advanced age, and minimal criminal history.

Before sentencing, Probation prepared Movant's Presentence Investigation Report (PSR), which set forth in detail the specific offense characteristics and Movant's personal characteristics, including his criminal history, employment history, age, etc. D.E. 530. His base offense level, based on 30,000 kilograms of marijuana, was 38, and he received a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(12) because he maintained a premises for the purpose of distributing a controlled substance. Movant's only criminal history point was for his 2011 conviction for alien harboring, resulting in a criminal history category of I. His advisory guideline range was 292 to 365 months' imprisonment. Trial counsel lodged a number of objections to the PSR.

At sentencing, the Court heard arguments from both sides. The Government sought a sentence at the highest end of the advisory guidelines, while Trial Counsel sought the lowest possible sentence. Movant maintained his innocence and refused to make a statement in mitigation. The Court sentenced Movant to 292 months, the lowest end of the guidelines. In imposing this sentence, the Court stated that it had considered the guidelines and the sentencing factors under 18 U.S.C. §3353, and it found that the sentence was sufficient but not greater than necessary and reflected the seriousness of the offense. The Court noted that this was a significant amount of time given Movant's minimal criminal history. This was due to the seriousness of the offense—the massive quantity of drugs involved in the conspiracy drove up Movant's offense level, which yielded a high advisory guideline range.

Movant's 292-month sentence was later reduced to 235 months under 18 U.S.C. § 3582 and Amendment 782 to the Sentencing Guidelines. Movant states that his sentence could have been further reduced under Amendment 782 had Trial Counsel argued for a downward variance at sentencing, citing U.S.S.G. § 1B1.10(b)(2) for the proposition that a "new sentence may not be below [] the amended guideline range unless [the] old sentence was below the original guidelines range." D.E. 872, p. 53. Movant is mistaken. A court may only reduce a sentence below the amended guideline range if the original downward departure was "pursuant to a government motion to reflect his substantial assistance to authorities." *United States v. Ramirez*, 631 F. App'x 269, 269–270 (5th Cir. 2016) (citing U.S.S.G. § 1B1.10(b)(2)(A), (B), comment. (n.1(A))). The Court could not have reduced Movant's sentence any lower than 235 months under Amendment 782.

On this record, Movant cannot demonstrate any ineffectiveness or prejudice arising from Trial Counsel's legal assistance at sentencing.

## IV.  EVIDENTIARY HEARING

A hearing is not required to dispose of a § 2255 petition if "'the motion, files, and record of the case conclusively show that no relief is appropriate.'" *United States v. Samuels*, 59 F.3d 526, 530 (5th Cir.1995) (quoting *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983)); *see also Randle v. Scott*, 45 F.3d 221, 226 (5th Cir.1995) (citing *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990)) (concluding that if the record is adequate to fairly dispose of the petition, no hearing is required). No evidentiary hearing is required in this case.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Although Movant has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a certificate of appealability (COA). *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA—that is, reasonable jurists could not debate the Court's resolution of his claims.

## VI. Conclusion

For the foregoing reasons, the Government's motion for summary judgment (D.E. 880) is **GRANTED**, and Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 871) is **DENIED**. Additionally, Movant is **DENIED** a Certificate of Appealability.

ORDERED this 19th day of December, 2016.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE